OPINION
Defendant-appellant William Sherwood appeals the decision of the Columbiana County Common Pleas Court, Juvenile Division, which declared his parentage of and ordered child support for the daughter of plaintiff-appellee Christina Kennedy. First, Mr. Sherwood contends that the trial court improperly deprived him of his right to a jury trial. Second, he alleges that the court's decision on paternity was not supported by sufficient evidence and was against the manifest weight of the evidence. Lastly, he argues that the court erred in its decision regarding the allocation of responsibility for health insurance and test fees. For the following reasons, the judgment of the trial court is affirmed in part and is remanded for a determination on the parties' liability for the child's potential medical expenses.
 STATEMENT OF FACTS
On November 28, 1995, Ms. Kennedy gave birth to her daughter. On August 20, 1996, she filed suit seeking a determination as to parentage and child support. Mr. Sherwood filed an answer denying that he was the child's father and demanding a jury trial. The first genetic test performed upon Mr. Sherwood revealed a 99.94% chance that he was the child's father. Subsequently, the trial court ordered a second genetic test. However, Ms. Kennedy failed to present herself and the child for testing.
Due to their absence, the trial court dismissed Ms. Kennedy's complaint without prejudice on April 27, 1998. The court held Ms. Kennedy liable for the costs in the action and stated that Mr. Sherwood would be accorded the right to a jury trial if the action were refiled.
Subsequently, Ms. Kennedy filed another complaint seeking a determination of paternity and child support. This time, Mr. Sherwood's answer did not contain a jury demand. On February 24, 2000, following a pre-trial conference, the trial court filed a judgment entry which stated that the case would not be tried by a jury. The court believed that Am.Sub.H.B No. 352, which went into effect before the first trial was dismissed, eliminated the right to a jury trial in paternity suits.
Before the case proceeded to trial, two more paternity tests were conducted, revealing a 99.98% and a 99.9995% chance of paternity respectively. After the bench trial, the trial court concluded that Mr. Sherwood fathered the child and set child support at $351.53 per month. Mr. Sherwood was ordered to provide the child with hospital and medical coverage through his employer if available at a reasonable cost. The court also noted that it would not order Ms. Kennedy to reimburse Mr. Sherwood $175 he paid toward genetic testing before the first action was dismissed. This appeal followed.
 FIRST ASSIGNMENT OF ERROR
Mr. Sherwood sets forth three assignments of error on appeal, the first of which alleges:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A JURY TRIAL BASED ON THE PREVIOUS ORDER OF THE TRIAL COURT IN THE INITIAL FILING OF THE ACTION AND BASED ON THE UNCONSTITUTIONAL NATURE OF THE AMENDMENTS TO R.C. 3111.12."
At the time Mr. Sherwood filed the original answer demanding a jury trial in this case, R.C. 3111.12 allowed parties to a parentage action to demand a jury trial within three days after the scheduled trial date. Effective January 1, 1998, Am.Sub.H.B. No. 352 deleted all references to jury trials from R.C. 3111.12.
Mr. Sherwood contends that he was entitled to rely on the court's journal entry which indicated that his right to a jury trial would be accorded to him if the action was refiled. In support of this proposition, Mr. Sherwood sets forth three arguments. First, he notes that the trial court's assurance that he would receive a jury trial came after the law was amended and, he claims that he is entitled to rely on this assurance. Second, he contends that the amended version of the statute was applied to him retroactively in violation of the Ohio and United States Constitutions as the first action and jury demand were filed prior to amendment of the statute. Finally, he asserts that the trial court's denial of a jury trial constituted a violation of his equal protection rights under the Ohio and United States Constitutions. Thus, Mr. Sherwood asks that this case be reversed and remanded for a jury trial.
 ANALYSIS
The threshold question that we are faced with is whether a party to a parentage action is entitled to a jury trial. The prior version of R.C.3111.12 provided:
 "[a]ny party to an action brought pursuant to sections 3111.01 to 3111.19 of the Revised Code may demand a jury trial by filing the demand within three days after the action is set for trial. If a jury demand is not filed within the three-day period, the trial shall be by the court."
Am.Sub.H.B. No. 352 removed this provision from the statute. As such, R.C. 3113.12 is now silent as to juries.
However, the jury trial provision in the previous version of the statute did not create the right to a jury trial in parentage actions. That right existed before the above-quoted language was inserted into the statute. See State ex rel. Stevenson v. Murray (1982), 69 Ohio St.2d 112,113; Sheppard v. Mack (1980), 68 Ohio St.2d 95, 100. The statutory language merely established a particular procedure for requesting a jury trial in parentage actions. See Abbott v. Potter (1992),78 Ohio App.3d 335, 338. Therefore, the effect of removing the language from the statute was to subject parentage actions to the general requirements set forth in Civ.R. 38. That Rule provides in part:
 "(A) Right Preserved. The right to trial by jury shall be preserved to the parties inviolate.
 (B) Demand. Any party may demand a trial by jury on any issue triable of right by a jury by serving upon the other parties a demand therefor at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue. Such demand shall be in writing and may be indorsed upon a pleading of the party. * * *."
In his answer to the initial complaint, Mr. Sherwood properly demanded a jury trial. As noted, that action was subsequently dismissed by the trial court. During a status conference in the initial case, the trial court assured Sherwood's counsel that if the case was refiled, he would have the right to a jury trial. It stated, "I think that if this matters(sic) starts over, I don't think that there is any doubt that he would have that right. All he'd have to do is ask for it." (4/21/98 Tr. at 11) (emphasis added). The April 27, 1998 judgment entry confirmed this. Prior to the trial in this case, Mr. Sherwood's counsel objected to the trial court's refusal to accord him a jury trial. The trial court stated that he no longer had a right to a jury and a trial court's assurance that he would get a jury trial cannot give a person rights that he does not otherwise have.
We find that the trial court misinterpreted Am.Sub.H.B. No. 352. After deletion of the procedural provisions in R.C. 3111.12, a party in a paternity action still possessed a right to a trial by jury. In order to exercise that right, however, the party must now comply with Civ.R. 38. This Mr. Sherwood did not do. As previously noted, Mr. Sherwood's answer to the second complaint did not include a demand for a jury trial. Nor did he subsequently file a written request for a jury trial in this
action. Even if the jury demand language had not been removed from R.C.3111.12, he still failed to preserve his right to a jury by timely filing a demand under that statute. (See 5/25/99 docket entry setting the case for trial on 8/4/99).
Mr. Sherwood's contention that he relied on assurances that he would be entitled to a jury trial made by the trial court is not well taken. The trial court specifically informed Mr. Sherwood that in order to receive a jury trial if the action was refiled, he would have to ask for it. Furthermore, the April 27, 1998 judgment entry merely stated that if the action was refiled, Mr. Sherwood's right to a jury trial would be accorded to him. A right to a jury trial is not automatic but must be actively exercised. Hence, statements by the trial court that the right exists did not relieve Mr. Sherwood of his duty to file a timely demand for a jury trial. Accordingly, Mr. Sherwood waived his right to a jury trial.
Because we have determined that the enactment of Am.Sub.H.B. No. 352 did not eliminate the right to a jury trial in parentage actions, Mr. Sherwood's remaining arguments concerning the unconstitutionality of the statute are moot. As such, the first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
The second assignment of error reads:
 "THE TRIAL COURT ERRED IN DETERMINING APPELLANT TO BE FATHER OF MINOR CHILD AS THIS DETERMINATION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND APPELLEES FAILED TO PROVE PATERNITY BY A PREPONDERANCE OF THE EVIDENCE."
The brief sets forth three subheadings under this assignment of error. The first subheading claims that Ms. Kennedy failed to prove paternity by a preponderance of the evidence. In making this argument, Mr. Sherwood also takes issue with foundational issues concerning the genetic tests. Repetitive arguments are contained in the second subheading which alleges that the court's decision on paternity was against the manifest weight of the evidence.
The complaint alleged that the child was conceived on or about February of 1995 and born on November 28, 1995. Contrary to Mr. Sherwood's suggestion, the failure to submit the child's birth certificate was not fatal to the case of paternity. Ms. Kennedy testified that her child was born on November 28, 1995 and stated that she had a birth certificate at home. She previously presented the birth certificate to the genetic testing centers, and those centers noted the date of birth on the reports that were admitted into evidence. If Mr. Sherwood disputed her claim regarding the date of birth, he could have subpoenaed the birth certificate. This determination is further supported by the analysis below regarding presumptions of paternity due to genetic test results.
Ms. Kennedy testified that she began having sexual relations with Mr. Sherwood in February 1995. Mr. Sherwood admitted that he began having sexual relations with Ms. Kennedy in late February or early March of 1995 and continued having sexual relations sporadically thereafter. Ms. Kennedy stated that her child was born at thirty-six to thirty-seven weeks gestation; she testified that she did not know she was pregnant until she went into labor. From the date of birth, a full-term child would have been conceived in late February and a child born at the gestational age given by Ms. Kennedy would have been conceived in mid-March. As per R.C. 3111.10(A), the existence of sexual relations between the parties at any possible time of conception is admissible evidence relating to paternity.
Opposing counsel asked Ms. Kennedy if she had sexual relations with four different men near the time of conception. She answered negatively. Mr. Sherwood testified that she had suggested to him that she engaged in sexual relations with two of those men during the time of conception. We note that it is the province of the trial court to judge credibility of witnesses. We do not reverse judgments as being against the manifest weight of the evidence as long as the judgment is supported by some competent, credible evidence. See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279.
As for Mr. Sherwood's allegation that a foundation for the genetic test results and Dr. Scarpetta's testimony was lacking, we find that any such argument was waived under R.C. 3111.12. Specifically, when a court orders a genetic test or intends to use a report of a genetic test, a party is given the opportunity to object to the admission of that test result within fourteen days after the result is mailed to him or his attorney. If the party files a written objection, then the report of the results are admissible as provided by the Rules of Evidence. However, if the party does not so object, then the report is admissible without the need for foundation testimony or other proof of authenticity or accuracy. Mr. Sherwood did not object to any of the test results. Moreover, his attorney stipulated that no objections were filed and that all test results could be admitted without the necessity of a foundation or other evidence. (Tr. at 4). As such, chain of custody and other foundational or authenticating evidence were not required. The reports were admissible in and of themselves without any need for any specific testimony by Dr. Scarpetta or others. Dr. Scarpetta testified about the procedure and methods involved in testing. He opined that Mr. Sherwood was the father. However, his testimony was not required; he was only called as an expert to testify about DNA probabilities in anticipation of and rebuttal to Mr. Sherwood's personal calculations and opinions that the probabilities in his case were insignificant compared to the possibilities that could theoretically exist.[1]
Finally, we direct Mr. Sherwood to R.C. 3111.03(A)(5), which provides that where court-ordered genetic tests indicate a probability of 99% or greater that the man is the biological father of the child, there exists a presumption that the man is the child's natural father. We then direct Mr. Sherwood to R.C. 3111.03(B) which pronounces that this presumption of paternity can only be rebutted by clear and convincing evidence. Thus, where the main unobjected to genetic test in this case indicated a paternity probability of 99.98%, the burden was shifted to Mr. Sherwood to rebut the presumption of paternity by clear and convincing evidence. (As aforementioned, the two other genetic tests also indicated a greater than 99% probability of paternity, 99.94% and 99.9995%).
Mr. Sherwood attempted to do this by giving his personal opinions about the reliability of the probabilities involved in genetic test results. He also attempted to do this by questioning Ms. Kennedy on and testifying about other possible sources of the genetic makeup of her child. The trial court did not find his attempts to be worthy of significant weight, nor do we. In conclusion, Mr. Sherwood failed to file objections to the results and, thus, foundational evidence was not required for admission of those results. His paternity was presumed due to the genetic test result, and he failed to rebut that presumption by clear and convincing evidence. Accordingly, this assignment of error is overruled.
The third subpart of this assignment of error contends that the complaint failed to state a claim upon which relief can be granted and the juvenile court lacked subject matter jurisdiction.
As for the allegation that the complaint failed to state a claim because it did not state that the child's conception resulted from an affair between the parties, this argument is without merit. The claim for relief was a determination of parentage. The complaint alleged the date of birth, date of conception and listed the mother and the father. Such is sufficient to state a claim.
In discussing subject matter jurisdiction, we recognize that R.C.2151.23(B)(2) provides that the juvenile court has jurisdiction to determine paternity of a child alleged to be born out of wedlock pursuant to the parentage statutes, R.C. 3111.01 through 3111.18. In State exrel. Willacy v. Smith (1997), 78 Ohio St.3d 47, the Supreme Court noted that a complaint sufficiently alleged that the child was born out of wedlock where it stated that the child was born as a result of an affair between the mother and the defendant. From this holding, Mr. Sherwood concludes that the complaint must sufficiently state that the child is born out of wedlock in order to state a claim and provide the juvenile court with jurisdiction over the subject matter.
Initially, we point out that Willacy was an appeal from the denial of a writ of prohibition where the alleged father had filed a pretrial motion to dismiss for lack of subject matter jurisdiction. Additionally, the mother in Willacy was married, making the born out of wedlock issue a determinative factor in that case.
In this case, appellant raises subject matter jurisdiction for the first time on appeal. Although subject matter jurisdiction is not waived by failure to timely object below, this case went through trial and the fact that Ms. Kennedy had never been married was brought out by the defense at that trial. (Tr. at 29). Thus, it is obvious to us that there is not a lack of subject matter jurisdiction, and we can therefore not reverse on this ground.
We further point out that an assignment of error dealing with manifest weight and preponderance of the evidence is not the proper place for raising subject matter jurisdiction. The arguments under each assignment of error must pertain to the concept outlined in the text of the assignment. App.R. 12 (A)(2); App.R. 16(A)(3) and (7). For the foregoing reasons, this argument is without merit.
 THIRD ASSIGNMENT OF ERROR
The third and final assignment of error contends:
 "THE TRIAL COURT ERRED IN DETERMINATION OF CHILD SUPPORT, HEALTH CARE COST PERCENTAGE AND IN ORDERING APPELLANT TO PAY $175.00 FOR INCOMPLETE TESTING CONDUCTED IN INITIAL FILING OF ACTION."
Mr. Sherwood raises two subassignments relative to his final assignment of error. The first subassignment notes that the child support worksheet demonstrates that his income represents 58.11% of the parties' total income. He thus claims that the court abused its discretion when it required him to pay 100% of health care costs.
The pertinent part of the court's child support order states, "The father shall include on his hospital and medical coverage through the place of his employment providing the same is available at a reasonable cost." On the worksheet, where it asks the amount of out-of-pocket costs necessary to provide for health insurance for the child, the court entered zero. Testimony established that Mr. Sherwood is not covered by a health insurance policy and does not have health insurance available through his place of employment at this time. (Tr. at 37). Hence, according to the court's judgment entry, Mr. Sherwood need not provide health insurance until it becomes available through his place of employment at a reasonable cost. As such, the court was correct in initially placing $0 in the health insurance blank on the worksheet.
Mr. Sherwood seems to complain that the court held him 100% liable for medical expenses. However, we see nothing in the judgment entry so holding. In fact, since Mr. Sherwood has no coverage available at work, the court left no party responsible for the child's medical care. We are compelled to hold that the court failed to follow the mandate of R.C.3109.05(A)(1) and (2), which requires the court to include in each support order that one or both of the parties must provide for the health care needs of the child. We must thus remand for the court to provide for the child's medical care.
We direct the court to R.C. 3119.30 which went into effect on March 22, 2001. The court may utilize the options under this statute as it applies to health insurance issues presently before the court regardless of when the original child support order was issued. See R.C. 3119.33. Pursuant to R.C. 3119.30, the court can require the obligor or obligee to obtain insurance if it determines that insurance is available at a reasonable cost through work or through other means.[2] If insurance is not available at a reasonable cost to either party, then the court shall order the parties to share liability for the cost of medical and health care needs under an equitable formula to be established by the court under the facts of the case. (This is where appellant's argument as to his percentage of the total income would come into play.) As such, we must remand this case to the trial court to make an order under R.C.3109.05(A)(2) and R.C. 3119.30 regarding how the parties shall pay for the child's medical needs. The court will have to determine if either of the parties presently have insurance available to them at a reasonable cost. If not, the court must apportion liability for medical expenses.
In the second subassignment of error, appellant contends that the court abused its discretion by failing to order that Ms. Kennedy reimburse him $175 for a test that was never completed. Specifically, in the first action, a court-ordered genetic test was conducted which showed a paternity probability of 99.94%. Upon Mr. Sherwood's motion, the court ordered a second set of tests to be performed at Mr. Sherwood's expense. On January 16, 1998, he gave his blood sample to DNA Diagnostics and paid them a $175 nonrefundable deposit. However, Ms. Kennedy failed to present herself and the child for collection of samples. Due to Ms. Kennedy's failure to appear for retesting, the court held her in contempt, dismissed the case without prejudice and ordered Ms. Kennedy to pay all costs. A cost bill and worksheet was attached to the court's order, showing $133.41 in court costs.
At trial after the action was refiled, it was noted that Ms. Kennedy paid the costs which she had been ordered to pay. Mr. Sherwood asked that, under the costs provision of the prior court order, he be reimbursed for the $175 that he paid to DNA Diagnostics before Ms. Kennedy failed to appear. The court found, however, that those results were utilized as one of three paternity tests in this litigation. It can be seen from the test report from DNA Diagnostics, which was used in the litigation and submitted as plaintiff's exhibit number three, that the sample tested was collected from Mr. Sherwood on November 24, 1999. Thus, the sample taken from Mr. Sherwood when he paid the $175 was not used later. However, we cannot determine whether DNA Diagnostics charged him $175 again or whether they credited him the $175 that he had previously paid them. In reading a letter sent by DNA Diagnostics after Ms. Kennedy failed to appear, it seems that they were keeping his $175 deposit on file for later testing. Moreover, the order that Ms. Kennedy was liable for costs was entered in the dismissal of the first action. If Mr. Sherwood wished to be reimbursed for the $175 deposit he allegedly lost due to the contempt of Ms. Kennedy, he should have ensured that the court specifically included it in that order. For all of the preceding reasons, we cannot say that the trial court abused its discretion when it refused to order that Ms. Kennedy reimburse Mr. Sherwood for the $175 deposit.
For the foregoing reasons, the judgment of the trial court is hereby affirmed in part and this matter is remanded for a determination on the parties' liability for the child's potential medical expenses.
DONOFRIO, J. and WAITE, J., concurs.
[1] We note that Dr. Scarpetta's qualifications include a PhD. in biochemistry, four years of postdoctoral work in molecular biology and five years of experience in DNA analysis. We then note that Mr. Sherwood is a mechanical engineer with an associate's degree and has no experience in biochemistry. We also note that an independent expert, which Mr. Sherwood testified to consulting, advised him that it is possible but unlikely that the child was not his.
[2] As aforementioned, health insurance was not available to Mr. Sherwood through his employer. We note that the court found Ms. Kennedy voluntarily unemployed and imputed income to her; we also note that she testified that before quitting her job for personal reasons regarding an ex-boyfriend, she had health insurance on herself and all three of her children. (Tr. at 20-21).